UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WACKENHUT SERVICES, INC.,

    Plaintiff,

v.

UNITED GOVERNMENT SECURITY
OFFICERS OF AMERICA, LOCAL 44,

    Defendants.

Civil Case No. 09-1433 (RJL)

MEMORANDUM OPINION
(September 30, 2010) [#11 and #13]

Plaintiff Wackenhut Services, Inc. ("plaintiff" or "WSI") brings this action against United Government Security Officers of America, Local 44 ("defendant" or "Local 44") to vacate, or modify, an arbitration award issued under the Collective Bargaining Agreement between WSI and Local 44, effective October 1, 2007 to September 30, 2010 ("CBA"). WSI claims, in essence, that the underlying grievance was not arbitrable and that, even if it were, the award exceeded the arbitrator's authority under the CBA. Before this Court is WSI's Motion for Summary Judgment and Local 44's Cross-Motion for Summary Judgment. After due consideration of the parties' pleadings, the relevant law, and the entire record herein, WSI's motion is DENIED and Local 44's motion is GRANTED.

1

## BACKGROUND

WSI is a Florida corporation that provides security services to U.S. Government agencies and private companies, including the Department of Justice ("DOJ"). Compl. ¶ 4. Prior to May 2008, under WSI's contract with DOJ, all security officers deployed at DOJ sites were required to be armed Justice Protective Security Officers ("JPSOs"). *Id.* ¶¶ 9-10. In August 2007, due to difficulties in hiring and retaining JPSOs in the Washington, DC area, together with the increasing demand for more security guards at a new DOJ site, WSI proposed to DOJ a two-tiered staffing arrangement that would include both armed JPSOs and unarmed Special Service Officers ("SSOs"). Pl.'s Stmt. of Facts ("Pl. Stmt.") ¶¶ 11-19. Six months later, in February 2008, DOJ approached WSI and asked if it remained willing to explore a two-tiered arrangement. *Id.* at 26-28. Subsequently, DOJ and WSI explored a staffing arrangement to supplement JPSOs that incorporated armed Special Police Officers ("SPOs"). *See* Pl.'s Mot. Mem. at 6; Def.'s Mot. Mem. at 5. SPOs, who had less credentials than JPSOs, would be paid a competitive salary, but one less than the current JPSO salary. *See* Pl.'s Mot. Mem. at 9; Def.'s Mot. Mem. at 7. After reaching agreements on all outstanding issues, WSI and DOJ entered into a formal bilateral contract modification ("Mod 41") on May 22, 2008. Compl. ¶ 9.

Local 44 is a union representing security officers employed by WSI and working at DOJ. *Id.* ¶ 5. On May 28, 2008, WSI informed Local 44 of Mod 41 and provided the union with a copy of the modification. *Id.* ¶ 11. Local 44

immediately objected to this contract modification. Pl.'s Mot. Mem. at 10. Notwithstanding their objection, WSI began hiring SPOs to staff the security positions in mid-August 2008. *See* Compl. ¶ 12. On September 2, 2008, Local 44 filed a grievance claiming that WSI had violated various terms of the CBA by hiring SPOs to perform work otherwise performed by JPSOs. *Id.* ¶ 13. Pursuant to the procedures outlined in the CBA, WSI and Local 44 disputed this grievance through various intermediate steps before proceeding to arbitration. *Id.* ¶ 14. WSI consistently maintained that Local 44's grievance was not arbitrable under the CBA. *See id.* ¶ 15.

On June 16, 2009, however, Arbitrator Andrew M. Strongin ("Strongin") found that Local 44's grievance was arbitrable because it involved neither an interpretation of WSI's contract with the government, nor the "adherence to a request" from the government. Conry Decl. Ex. 15, at 7-9. As such, Strongin concluded that WSI had violated the terms of the CBA by staffing positions identified in Mod 41 with SPOs. *Id.* at 9-15. Central to Strongin's holding was the admission made by WSI representative Kevin Conry, "that nothing in Mod 41 precludes WSI from continuing to staff all posts with JPSOs, albeit at the new SPO rate." *Id.* at 14. Thus, Strongin determined that WSI should pay those SPOs already hired the negotiated wage under the CBA, both retrospectively and prospectively. *Id.* at 16. Strongin further determined that WSI should cease hiring any additional SPOs. *Id.*

On July 31, 2009 WSI brought this action challenging Strongin's decision,

claiming that defendant's grievance was not arbitrable and that, even if it were, the award issued by Strongin exceeded his authority under the CBA. Compl. ¶¶ 18-26. WSI, in essence, wants this Court to vacate Strongin's decision or, at a minimum, modify it to be consistent with the CBA. *Id.* ¶¶ 25-26. For the following reasons, I cannot do either.

## ANALYSIS

Both plaintiff and defendant have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment shall be granted in favor of a particular movant if the record demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing same). In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### I. Defendant's Grievance Was Arbitrable Under the CBA

In deciding whether a labor dispute is subject to arbitration under a collective-bargaining agreement, this Court is guided by the four principles set forth by the Supreme Court in *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-50 (1986). The first principle recognizes that arbitration is the product of contractual obligations and, therefore, "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.* at 648-49. As such, the second principle recognizes

4

that unless the parties have agreed otherwise, it is for the courts, not the arbitrator, to decide whether arbitration is required under the agreement. *Id.* at 649. Third, in deciding whether a grievance is arbitrable, courts should not "rule on the potential merits of the underlying claims." *Id.* And under the fourth principle, the courts recognize a presumption of arbitrability. *Id.* at 650. Specifically, this principle requires that arbitration be upheld "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (emphasis added).

Here, Article 7 of the CBA sets forth the grievance procedures binding on WSI and Local 44. Conry Decl. Ex. 2 ("CBA"), at 5-8. With respect to arbitration, Section 3(d) of the agreement states, "[e]xcept as limited below, any grievance arising during the term of this Agreement not resolved [through prior grievance procedures] may be submitted to arbitration by [Local 44] . . ." *Id.* at 6. As an initial matter, Section 3(d)(i) makes clear that only Local 44 can initiate an arbitration proceeding. *Id.* Section 3(d)(ii) then states, in relevant part, that "[n]o grievance regarding a dispute as to . . . the Employer's adherence to a request of the Government shall be processed to [arbitration] since those matters are not arbitrable . . ." *Id.* Sections 3(d)(iii)-(vii) proceed to set out the procedures and permissible scope for the arbitration. In that regard, Section 3(d)(vii) states that the "arbitrator shall have no to power to . . . consider any matter or substitute his/her judgment for that of the Government's regarding a determination or request of the Department of Justice . . ." *Id.* WSI argues, however, that the effect

5

of this section of the agreement actually precludes arbitration here because Strongin made reference in his decision to DOJ's requests and inquiries leading up to the adoption of Mod 41. *See* Pl.'s Mot. Mem. at 14-15. I disagree.

Article 7, Section 3(d), in its entirety, clearly indicates that it is Section 3(d)(*ii*) that sets the limits on what types of grievances may be arbitrated. In other words, Section 3(d)(ii) establishes the limits on the arbitrator's jurisdiction.[1] Indeed, the text of Section 3(d)(ii) specifically enumerates the "grievance[s]" that "are not arbitrable" under the agreement. CBA at 6. Thus, Strongin would have no jurisdiction over a "dispute as to . . . the Employer's *adherence to a request* of the Government" *Id.* (emphasis added). Section 3(d)(*vii*), by comparison, merely establishes limits on the *scope* of the arbitrator's authority in addressing and remedying a grievance that has been properly put before him or her. This limitation is evident from the Section, itself, which provides that the arbitrator may not look beyond or modify the CBA, apply law, establish or modify any wage rates, limit WSI's discretion "except only as that discretion may be specifically limited by the express terms of [the CBA]," or, indeed, consider matters regarding requests from DOJ. *Id.* at 7. It is also, of course, consistent with the well-established cannon of construction that prefers an interpretation of a contract "which gives a reasonable, lawful, and effective meaning to all the terms . . . to an interpretation which leaves a part [of the contract] unreasonable, unlawful, or of

---

[1] Indeed, the structure of Section 3 sets forth the grievance procedure in chronological order. Plaintiff's reading of Section 3(b)(vii) is simply inconsistent with the structure of the section.

6

no effect." Restatement (Second) of Contracts § 203(a) (1981). If this Court were to adopt WSI's reading of Section 3(d)(vii), as a supplement to those limitations set forth in Section 3(d)(ii), I would effectively be rewriting the CBA to include a more restrictive scope of arbitrability than that set forth in Section 3(d)(ii). *See id.* § 203 cmt. b.[2] Instead, applying Article 7, Section 3(d)(ii) to the question of arbitrability, I easily conclude that defendant's grievance was indeed arbitrable. How so?

> Defendant's grievance states the following:
>
> On or about August 18, 2008, the Employer began employing employees with the classification Special Police Officer (SPO) to perform work otherwise performed by bargaining unit JPSOs. The SPOs do not receive the same wages and/or benefits as bargaining unit JPSOs. The Employer unilaterally made the decision to hire such SPOs, and unilaterally set their terms and conditions of employment.

Conry Decl. Ex. 11. The record unambiguously illustrates that WSI's actions, as

---

[2] In any event, Strongin did not "consider" any matter regarding DOJ's request, in violation of Section 3(d)(vii), when he made his determination. Conry Decl. Ex. 14 at 11-19. Unlike the question of arbitrability, which is a matter for the courts, "the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 765 (1983). Thus, this Court's review of plaintiff's claims under Section 3(d)(vii) is very limited. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Strongin determined that, *notwithstanding* any requests by DOJ, plaintiff had violated the terms of the CBA by hiring SPOs to perform JPSO functions. Conry Decl. Ex. 14 at 14-18. Further, Strongin's resolution did not require consideration of the DOJ's requests or of Mod 41. *Id.* at 18. Indeed, Strongin determined that because "nothing in Mod 41 precludes WSI from continuing to staff all posts with JPSOs, albeit at the new SPO rate," his resolution did not "interfere in any way with DOJ's ability to enjoy the fruits of Mod 41." *Id.* Strongin correctly used his ability to determine the scope of his authority under the CBA. In so doing, Strongin, far from considering "any matter . . . regarding a . . . request of the [DOJ]," determined that no consideration of a request was necessary.

7

specified in the grievance, were *not* in adherence to a request of the Government as prohibited in Section 3(d)(ii). First, it is clear that it was WSI who initiated the dialog with DOJ regarding a two-tiered hiring structure, a fact wholly inconsistent with a finding that plaintiff "adhered" to a request.[3] *See Wackenhut Services Inc. v. UGSOA, Local 44*, No. 05-805, 2006 U.S. District LEXIS 19414, at *6-7 (D.D.C. Mar. 30, 2006). Second, WSI was never bound by any of the DOJ's requests. To the contrary, when DOJ approached WSI in February 2008, DOJ asked *if* WSI was still interested in pursuing the two-tiered structure it had proposed in August 2007, and DOJ was thereafter guided by WSI's proposals on how the two-tiered structure would operate. *See* Conry Decl. ¶¶ 9-12. Thus, WSI's ultimate decision to violate the terms of the CBA was its own and not attributable to its "adherence" to a DOJ request. For these reasons, plaintiff has failed to overcome the presumption of arbitrability embodied in Section 3(d).[4]

## II. Arbitrator Strongin's Award Must Be Confirmed

Finally, WSI claims that Strongin's award here must be either vacated or modified because Strongin inappropriately "establish[ed] . . . [a] wage rate," in

---

[3] Plaintiff's argument that the August 2007 proposal of a two-tiered structure had no causal effect on the DOJ's February 2008 request is to no avail. *See* Pl.'s Opp'n at 4-5. Whether the second-tier officer was armed or unarmed is not dispositive of the issue. Mr. Conry's own explanation of the DOJ's inquiry into whether plaintiff "remained willing to explore such an arrangement" indicates that it was a merely follow-up to the August 2007 discussion. Conry Decl. ¶ 8.

[4] Defendant also argues that WSI's argument requires the Court to look beyond the scope of the grievance and that WSI's interpretation of the CBA would lead to absurd results. Def.'s Mot. Mem. at 18-20. This Court, however, need not reach these questions. For the reasons stated above, this Court finds that defendant's Motion for Summary Judgment must be granted.

8

violation of CBA, Article 7, Section 3(d)(vii), by requiring plaintiff to pay SPOs the JPSO wage. Pl.'s Mot. Mem. at 23. I disagree.

The standard of review for arbitration awards is extremely narrow. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Indeed, "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements," because it is consistent with the "federal policy of settling labor disputes by arbitration" and recognizes the parties' consensual agreement encompassed in the arbitration clause. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp. ("Enterprise Wheel")*, 363 U.S. 593, 596 (1960). Notwithstanding that practice, however, this Court recognizes that "an arbitrator is confined to interpretation and application of the collective bargaining agreement." *Id.* at 597. Therefore, "[an arbitrator's] award is legitimate so long as it draws its essence from the [agreement]." *Id.*

Here, plaintiff, in essence, mischaracterizes Strongin's award. Far from establishing a wage rate, Strongin merely recognized that under the CBA, plaintiff was required to pay the JPSO rate. *See* Conry Decl. Ex. 14, at 18. Because the award not only draws its essence from the CBA, but is an entirely reasonable interpretation of the terms of the CBA, this Court must, and will, uphold his judgment. *See Enterprise Wheel*, 363 U.S. 597-98.

9

## CONCLUSION

For all of the foregoing reasons, the Court DENIES WSI's Motion for Summary Judgment [#11] and GRANTS Local 44's Cross-Motion for Summary Judgment [#13]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge